UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREGG BLAUVELT,<br><br>*Plaintiff*,<br><br>v.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | No. 3:19-cv-01446 (KAD)<br><br><br><br><br><br>July 31, 2020 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (ECF NO. 12) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 16)**

Kari A. Dooley, United States District Judge:

Plaintiff Gregg Blauvelt ("Blauvelt" or the "Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand the matter for a new hearing. The Commissioner opposes the Plaintiff's claims of error and moves to affirm its decision. For the reasons set forth below, the Plaintiff's motion to remand for a new hearing is GRANTED and the Commissioner's motion to affirm is DENIED.

**Background and Procedural History**

On July 18, 2016, Plaintiff filed an application for DIB pursuant to Title II of the Act, alleging that he was unable to work as of September 1, 2014 due to back spasms, leg numbness, depression, anxiety, and slipped discs in his lower back. (Tr. 59.) His application was denied initially on September 19, 2016 (Tr. 83) and on reconsideration on February 14, 2017. (Tr. 94.)

1

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held before ALJ Edward F. Sweeney on July 13, 2018 in Hartford, Connecticut. Plaintiff testified at the hearing without counsel or other representation. (Tr. 28–52.) Following the hearing, the ALJ issued a written decision on October 3, 2018 in which he concluded that Blauvelt was not disabled within the meaning of the Act. (Tr. 10–21.) The Appeals Council denied Plaintiff's request for review on August 23, 2019 (Tr. 1) and this appeal followed.

Plaintiff asserts a number of errors that he argues warrant reversal of the ALJ's decision, including that ALJ Sweeney was not appointed consistent with the Appointments Clause of the United States Constitution at the time that he presided over the Plaintiff's hearing. Blauvelt thus argues that he is entitled to a new hearing before a properly appointed ALJ. The Commissioner does not contest the constitutional violation but asks the Court to find Plaintiff's argument forfeited due to his failure to exhaust the claim by raising it before the agency. Because the Court agrees with the Plaintiff on this issue and remands this matter to the Commissioner for a new hearing, the Court does not reach the other issues raised on appeal.

**Standard of Review**

The doctrine of administrative exhaustion "holds that federal courts should refrain from adjudicating a controversy if the party bringing suit might obtain adequate relief through a proceeding before an administrative agency." *Washington v. Barr*, 925 F.3d 109, 116 (2d Cir. 2019). Administrative exhaustion is necessary when it is specifically mandated by Congress, "'[b]ut [even] where Congress has not clearly required exhaustion,' a court may still impose it as an act of 'sound judicial discretion.'" *Id*. (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute as recognized in Porter v. Nussle*, 534 U.S. 516 (2002)).

"In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146.  "[A]ttention [must be] directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id*.  The institutional interests to be considered include "protecting administrative agency authority" and "promoting judicial efficiency" by providing the agency the opportunity to resolve disputes in the first instance.  *Id.* at 145; *see also Washington*, 925 F.3d at 117.  The Supreme Court has identified three circumstances in which the individual's interest in access to a judicial forum outweighs these important institutional prerogatives–where the administrative remedy would be inadequate due to: (1) "undue prejudice to subsequent assertion of a court action"; (2) "some doubt as to whether the agency was empowered to grant effective relief"—such as where the agency "may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented"; or (3) some demonstration of bias or predetermination on the agency's part. *McCarthy*, 503 U.S. at 146–48 (quotation marks and citation omitted).

**Discussion**

> The Appointments Clause of the United States Constitution provides that the President:
>
> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. Art. II § 2, cl. 2.

In *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the Supreme Court held that the ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" within the meaning of the Appointments Clause and accordingly must be appointed either by the President, a court of law, or the department head.  Though the decision did not address ALJs employed by federal agencies other than the SEC, in response to the decision in *Lucia,* the President issued an Executive Order on July 10, 2018 declaring that "some and perhaps all ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause, which governs who may appoint such officials."  Exec. Order No. 13843, 83 FR 32755 (July 10, 2018).  The President accordingly placed ALJs in the excepted service, thereby exempting them from competitive service hiring procedures, in order to provide agency heads greater flexibility in making ALJ appointments.  *See id*.  "[O]n July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [the agency's] ALJs and approved those appointments as her own," in order to resolve any Appointments Clause questions in the wake of *Lucia*.  *See* Social Security Ruling ("SSR") 19-1p; *Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council*, 84 FR 9582-02, 9583 (March 15, 2019).

Notwithstanding the issuance of the Executive Order, the Social Security Administration ("SSA") went ahead with Blauvelt's hearing on July 13, 2018—three days after issuance of the Executive Order and three days before the Acting Commissioner ratified the appointments of the SSA's ALJs.  At the time that ALJ Sweeney presided over the Plaintiff's hearing, therefore, ALJ Sweeney's appointment did not comport with Constitutional requirements.  The Commissioner does not disagree but argues that the Plaintiff was nonetheless required to raise his Appointments Clause claim before the SSA in order to preserve the issue for federal court review.

4

As noted previously, exhaustion can be imposed legislatively or as a matter of judicial discretion. *Washington*, 925 F.3d at 116. While he does not argue that exhaustion is statutorily prescribed, the Commissioner cites various SSA regulations that require claimants to bring their challenges to the agency in support of his contention that the regulations favor exhaustion. (Comm'r's Br. at 22–23, ECF No. 16-1). For example, the regulations provide that a written request for a hearing before an ALJ must include "[t]he reasons you disagree with the previous determination or decision." 20 C.F.R. § 404.933(a)(2). If a claimant "object[s] to the issues to be decided at the hearing, [he] must notify the administrative law judge in writing at the earliest possible opportunity, but no later than 5 business days before the date set for the hearing" with certain exceptions. *Id*. § 404.939. Similarly, if the claimant "object[s] to the administrative law judge who will conduct the hearing, [he] must notify the administrative law judge at [his] earliest opportunity." *Id*. § 404.940.

The Court can agree that the SSA regulations are designed to facilitate the prompt and efficient identification of issues for administrative adjudication. Nowhere, however, do they specify that an issue is forfeited for purposes of judicial review if it is not raised before or during the claimant's hearing. As the Supreme Court acknowledged twenty years ago, the "SSA regulations do not require issue exhaustion." *Sims v. Apfel*, 530 U.S. 103, 108 (2000). "[A]nd in the 20 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion." *Suarez v. Saul*, No. 3:19-CV-00173 (JAM), 2020 WL 913809, at *4 (D. Conn. Feb. 26, 2020) (quotation marks, brackets, and citation omitted). Indeed, the Commissioner has elsewhere acknowledged this very premise. *See Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153 (3d Cir. 2020) ("The Commissioner concedes that there is no statutory or regulatory exhaustion requirement that governs SSA proceedings."). Nor has Congress enacted

an exhaustion provision. *See id*. Indeed, as Judge Meyer noted recently when confronting this same issue, "Congress has not expressly required that a disability applicant who wishes to challenge the authority of an ALJ under the Appointments Clause must do so in the first instance during the course of proceedings before the ALJ." *Suarez*, 2020 WL 913809, at *2.

The question for this Court, therefore, is whether exhaustion should be required as a matter of judicial discretion. In holding that Lucia's challenge, which was presented to the SEC on appeal, warranted a new hearing before a properly appointed ALJ, the Supreme Court reiterated "that 'one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)) (emphasis added). Relying at least in part on this language, some Courts of Appeals, including the Second Circuit, have deemed Appointments Clause challenges forfeited if the claimant did not raise the issue in the underlying administrative proceeding. *See, e.g.*, *Gonnella v. Sec. & Exch. Comm'n*, 954 F.3d 536, 544 (2d Cir. 2020) (joining the Ninth and Tenth Circuits in holding "that a litigant who does not object to the constitutionality of an ALJ at any point during the SEC proceedings forfeits that challenge"); *Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1256–58 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1551 (2020) (declining to excuse failure to exhaust after determining it to be statutorily required by applicable securities laws); *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 749–50 (6th Cir. 2019), *reh'g denied* (Sept. 24, 2019) (holding that the Black Lung Benefits Act regulations required exhaustion of Appointments Clause claim before the Department of Labor's Benefits Review Board in order to obtain judicial review).

The Supreme Court, however, has indicated that "the doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue." *Smith v.*

*Berryhill*, 139 S. Ct. 1765, 1776 (2019) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)); *accord McCarthy*, 503 U.S. at 146.  It has further observed that the Social Security Act "as a whole is one that 'Congress designed to be unusually protective of claimants,'" *Smith*, 139 S. Ct. at 1776 (quoting *Bowen v. City of New York*, 476 U.S. 467, 480 (1986)) (internal quotation marks omitted), a proposition often embraced by the Second Circuit, *see, e.g.*, *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (observing that the Social Security "Act must be liberally applied, for it is a remedial statute intended to include not exclude") (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) ("[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied'") (quoting *Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969)); *Eisenhauer v. Mathews*, 535 F.2d 681, 686 (2d Cir. 1976) ("[T]he Social Security Act is to be accorded a liberal application in consonance with its remedial and humanitarian aims").  Yet the Second Circuit has not addressed the question of exhaustion in this context and among those courts that have considered the issue there is currently a split of authority.

In *Cirko*, the Third Circuit held that exhaustion is not necessary for SSA claimants to obtain federal court review of an Appointments Clause challenge.  In balancing the individual and institutional interests as mandated by *McCarthy*, the court first observed that the nature of Appointments Clause claims do not call upon the SSA's administrative expertise, yet they do implicate significant constitutional interests that promote political neutrality and accountability as a means of safeguarding individual liberty, and are thus "claims for which a hearing on the merits is favored."  *Cirko*, 948 F.3d at 153–55.  Specific to SSA proceedings, the *Cirko* court cited "two unusual features of the SSA review process" discussed by the Supreme Court in *Sims v. Apfel. Id.* at 155.  First, in determining that claimants need not exhaust an issue before the Appeals Council

to obtain judicial review, Justice O'Connor's controlling concurring opinion "emphasized that because no SSA regulations required exhaustion to the Appeals Council, imposing an 'additional requirement' of exhaustion would penalize claimants who did 'everything that the agency asked.'" *Id.* at 155 & n.4 (quoting *Sims*, 530 U.S. at 114 (O'Connor, *J*., concurring)) (brackets omitted). Second, the *Cirko* court found that, as discussed in *Sims*, the inquisitorial nature of SSA hearings weakens the need for exhaustion, because SSA ALJs do not rely upon claimants to develop the issues in the same way that they would in an adversarial proceeding. *Id*. at 155 (citing *Sims*, 530 U.S. at 109–10). Therefore, the court reasoned, the features that militated against applying an exhaustion requirement at the Appeals Council in *Sims* were equally applicable in the context of Appointments Clause claims before the ALJ. *Id*. at 156.

The *Cirko* court ultimately determined that exhaustion would create an undue burden on claimants' strong interest in enforcement of the Appointments Clause, given that the SSA's inquisitorial system principally vests responsibility for developing issues in the ALJs, not individual claimants. *See id*. at 156–57. "Requiring exhaustion" would therefore "upend this arrangement by forcing claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." *Id*. at 157. The court noted that this concern was especially pronounced with unrepresented claimants, who likely lack familiarity with the technical nature of Appointments Clause claims, and whose rights are otherwise unlikely to be vindicated by an ALJ challenging his or her own appointment. *Id*. The institutional interests, on the other hand, the court deemed minimal, as an Appointments Clause claim is not one that calls upon the exercise of the SSA's administrative expertise; nor is the SSA equipped to provide effective relief: "[a]t neither the trial nor the appellate levels could the SSA's administrative judges cure the

8

constitutionality of their own appointments, whether by reappointing themselves, . . . or by transferring the case to a constitutionally appointed ALJ." *Id*. at 158.

The Tenth Circuit, by contrast, has imposed an exhaustion requirement for Appointments Clause challenges to the SSA's ALJs. *See Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020), *petition for cert. filed*, No. 19-1442 (July 1, 2020). Its analysis rested largely on its disagreement with the district court's reliance on *Sims*. First, the court noted that the disposition in *Sims* was confined to the question of whether a claimant's failure to raise issues before the SSA Appeals Council constituted a waiver of her right to raise those issues in the district court; the Supreme "Court emphasized that 'whether a claimant must exhaust issues before the ALJ is not before us.'" *Id*. at 1274 (quoting *Sims*, 530 U.S. at 107) (brackets omitted). Second, the Tenth Circuit observed that Justice O'Connor's controlling concurrence highlighted the fact that Appeals Council review is plenary and "SSA Appeals Council petition forms provide only three lines for claimants to specify the bases for appeal," unlike the more detailed regulations, including those cited above, that require claimants to identify issues and objections in advance of a hearing before the ALJ. *Id*. at 1274–75 (citing *Sims*, 530 U.S. at 113–14 (O'Connor, *J*., concurring)). Third, the court found that the district court inappropriately relied on the inquisitorial nature of SSA proceedings when this rationale was endorsed by only a plurality of Justices in *Sims*, and not by Justice O'Connor's concurrence. *Id*. at 1275. Fourth, even accepting that SSA hearings are generally inquisitorial, the Tenth Circuit deemed an Appointments Clause challenge inherently adversarial and therefore the responsibility of the claimant to raise. *Id*. And finally, the Tenth Circuit disagreed with the Third Circuit that the SSA is without authority to remedy an Appointments Clause violation, as such a challenge would put the agency on notice of the need for a proper appointment and the Appeals Council could vacate the decision of an unappointed ALJ. *Id*.

The Eighth Circuit also recently imposed an exhaustion requirement for Social Security claimants who seek to litigate Appointments Clause challenges. *See Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020). In considering whether to excuse claimants' failure to raise their Appointments Clause claims before the SSA, the court first dismissed the idea that constitutional claims deserve special treatment when it comes to forfeiture doctrine—a principle recognized by pre-*Lucia* Eighth Circuit precedent. *See id*. at 794 (citing *NLRB v. RELCO Locomotives, Inc*., 734 F.3d 764, 798 (8th Cir. 2013)).[1] The court also rejected the notion that the SSA lacked the ability to remedy Appointments Clause challenges; while the court accepted that it was perhaps unlikely that the agency would alter its system of review at the urging of a single claimant, the court emphasized that the timely objections of hundreds or thousands of SSA claimants could have prompted universal administrative action and thus generated a more efficient remedy than that achieved via the rehearing of individual cases. *See id*. at 794–95. The Eighth Circuit's decision appears to have been heavily influenced by "the practicalities of potentially upsetting numerous administrative decisions because of an alleged appointment flaw to which the agency was not timely alerted." *Id*. at 795.[2]

Having considered these divergent outcomes, this Court agrees with the Third Circuit. While the Court finds the Supreme Court's decisions in *Sims* instructive, as other courts have

---

[1] The Second Circuit recently endorsed this principle in *Gonnella*, 954 F.3d 536, quoting Justice Scalia for the view that "Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review." *Id*. at 543 (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893 (1991) (Scalia, *J.*, concurring in part and concurring in the judgment)). In holding that Appointments Clause challenges not raised before the SEC are forfeited, the Second Circuit rejected the appellant's argument that exhaustion would have been futile, reasoning that "the SEC . . . was in a position to provide meaningful review." *Id*. at 545–46. As discussed *infra*, this Court does not believe that the same conclusion necessarily holds in the context of SSA proceedings and with respect to Blauvelt's claim in particular.

[2] This driving concern is completely absent in this case. Here, there is no question that the agency was "timely alerted" to the issue. Indeed, it held the Plaintiff's hearing after the issuance of the Executive Order which called into question the constitutionality of the ALJ's appointment. While it is somewhat astonishing that the SSA held ***any*** hearings after the Executive Order was issued and before an administrative "fix" could be implemented, the unique timing of Blauvelt's hearing obviates the Eighth Circuit's concern regarding the rehearing of numerous cases. The circumstances here implicate only those claimants whose hearings occurred between July 10, 2018 and July 16, 2018.

noted, neither the plurality nor Justice O'Connor's concurrence reached this precise issue. *See, e.g.*, *Cirko*, 948 F.3d at 155 ("while Sims does not dictate the answer, its lessons loom large.") The Court disagrees with the Tenth Circuit that Justice O'Connor's concurrence mandates a different result, however. Indeed, she wrote her concurrence "separately because, in my view, the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for our decision." *Sims*, 530 U.S. at 113 (O'Connor, *J.*, concurring). The same reasoning can be applied here. As noted above, the SSA regulations embody no requirement of issue exhaustion—either before the ALJ or in the context of Appeals Council review. And as the Third Circuit aptly emphasized, Appointments Clause claims do not implicate the SSA's special expertise in any way that counsels in favor of requiring the agency to consider the question in the first instance. *See Cirko*, 948 F.3d at 158.[3]

Nor does the Court agree with the Tenth Circuit that the distinction between adversarial and inquisitorial proceedings discussed by the plurality in *Sims* should be disregarded in the context of an Appointments Clause challenge. As another district court explained in reaching the opposite conclusion, the term "'adversarial' is used as a shorthand description of a system that assigns primary responsibility for investigating and raising issues, be they factual or legal, to the adversaries – the litigants - not the judge," while "'[i]nquisitorial' is a descriptor for a system in which the judge, not the litigants, bears the primary responsibility for case development." *Harold v. Saul*, No. CV 18-03994, 2019 WL 6003494, at *4 (E.D. Pa. Nov. 13, 2019) (citing *Sims*, 530 U.S. at 111 (plurality opinion)). Thus, "the nature of the issue, whether Constitutional or an

---

[3] For this reason the Court finds inapposite those decisions cited by the Commissioner that have required plaintiffs to exhaust claims of error with respect to the five-step disability evaluation process undertaken by the ALJ. *See, e.g., Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001). This Court does not address whether exhaustion is required in such instances and confines its review to the specific question of the Appointments Clause violation in Blauvelt's case.

ordinary fact issue, does not determine whether a system is 'adversarial' or not, as that term is used in *Sims*" and the identification of an Appointments Clause challenge does not transform an otherwise inquisitorial proceeding into an adversarial one. *See id.* at*4–*5.[4]

However, the Court need not and does not rely solely on *Sim's* strictures in concluding that this case presents one of those circumstances where "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief" and that the individual interests accordingly outweigh the institutional interest in and preference for exhaustion. *McCarthy*, 503 U.S. at 147 (quotation marks and citation omitted); *see also Suarez*, 2020 WL 913809, at *4 (noting that this same consideration, as articulated in *McCarthy*, underscored the futility of requiring exhaustion of an Appointments Clause claim).

As already discussed, Blauvelt's hearing on July 13, 2018 was conducted during the narrow six-day window between issuance of the Executive Order that pronounced "some and perhaps all ALJs . . . subject to the Constitution's Appointments Clause," 83 FR 32755, on July 10, 2018, and the SSA Acting Commissioner's ratification of the agency's ALJs on July 16, 2018. Thus, the SSA was clearly on notice, at the time it held Blauvelt's hearing, that the employment of its ALJs likely ran afoul of the Appointments Clause. Given this timing, the Eighth and Tenth Circuit's

---

[4] The Court distinguishes the Second Circuit's holding in *Gonnella* on this basis as well. Administrative proceedings before the SEC are unquestionably adversarial and the outcomes of those proceedings can include the imposition of significant civil penalties to include fines and industry bans. *See, e.g.*, *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1940 (2020) (explaining the history with which Congress has authorized the SEC "to punish securities fraud through administrative and civil proceedings," which includes, on the administrative side, the ability to "seek limited civil penalties and 'disgorgement.'") (citing 15 U.S.C. §§ 77h-1(e),(g)); *Gonnella*, 954 F.3d at 550 (describing the Commission's authority to "suspend a defendant for up to 12 months" or to impose a ban on certain industry affiliations based upon a finding of a willful statutory violation and that "such a bar would serve the public interest") (citing 15 U.S.C. §§ 78o(b)(6)(A), 80b-3(f)). Administrative proceedings before the Commissioner, on the other hand, are designed to determine the benefits to which a claimant might be entitled. *See, e.g.*, *Daniels v. Berryhill*, No. 3:16-CV-01181 (SALM), 2017 WL 2798500, at *8 (D. Conn. June 28, 2017) ("It is well established in the Second Circuit that a claimant for disability benefits is entitled to a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.") (quotation marks and citation omitted). Such radically different outcomes underscore the significance of the "inquisitorial" versus "adversarial" label and in the Court's view, its impact on the result here.

emphasis on exhaustion as providing the required notice for the agency to remedy a constitutional violation lacks force in the context of Blauvelt's proceedings. *See Davis*, 963 F.3d at 794–95; *Carr*, 961 F.3d at 1275. As the Eighth Circuit noted, moreover, while *Lucia* was pending before the Supreme Court, the SSA Office of General Counsel issued an emergency measure instructing ALJs "not to 'discuss or make any findings related to the Appointments Clause issue,' because the 'SSA lacks the authority to finally decide constitutional issues such as these.'" *Davis*, 963 F.3d at 792 (quoting *Soc. Sec. Admin., EM-18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* (2018)). Following the decision in *Lucia*, the agency issued an updated emergency measure that "continued to instruct ALJs to acknowledge, but not to address, challenges based on the Appointments Clause." *Id.* (citing *Soc. Sec. Admin., EM-18003 REV: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process – UPDATE* (2018)). This emergency measure remained pending until August 6, 2018. *Id.*

At the time of Blauvelt's hearing, therefore, the agency was not ruling on Appointments Clause challenges per the SSA's own guidance and it was fully aware of the constitutional problem. Now, having made the decision to proceed with Blauvelt's hearing notwithstanding, the Commissioner "asks for a court imposed, after-the-fact issue exhaustion rule to cure the administrative burden occasioned by [the SSA's] Appointments Clause error" and this decision. *Harold*, 2019 WL 6003494, at *5. In these circumstances the Court agrees with the district court in *Harold* that "[i]t seems more appropriate to impose the burden of the error on the agency, who was in the best position to avoid the mistake in the first place, and is in the best position to remedy the mistake now that it has been acknowledged." *Id.*

Finally, for these and other sound reasons unique to this Plaintiff, even if the Court were to determine that exhaustion of this issue would ordinarily be required, the Court would waive it on the basis of futility.[5]  *See Washington*, 925 F.3d at 118 (explaining that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute," and identifying the futility of seeking relief before the agency as one of the exceptions to judge-made exhaustion).

For all of these reasons, the Court holds that Blauvelt's Appointments Clause challenge is not forfeited.  Because there is no dispute that ALJ Sweeney was not constitutionally appointed at the time that he presided over the Plaintiff's hearing, the case must be remanded to a different, constitutionally appointed ALJ.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion to remand is granted and the Commissioner's motion to affirm is denied.  This matter is remanded to the Commissioner for a new hearing before a constitutionally appointed ALJ. The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of July 2020.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[5] Blauvelt was uncounseled during his hearing and was thus among the "roughly thirty percent" of unrepresented SSA claimants whose already intrinsic disadvantage would be rendered "irreparable" by an exhaustion precondition. *See Cirko*, 948 F.3d at 157 & n.7. In addition, at his hearing Blauvelt testified that his "short-term memory only lasts about 15 minutes," which is a condition that he attributed to a traumatic brain injury he suffered following a motor vehicle accident. (Tr. 37–38.) The ALJ also found in his decision that Blauvelt experienced moderate limitations "[i]n understanding, remembering, or applying information," as well as "[i]n interacting with others" and in "concentrating, persisting, or maintaining pace." (Tr. 13.) These cognitive limitations may have exacerbated Blauvelt's disadvantages as an unrepresented claimant and yield an even greater improbability that he could have raised a timely or effective Appointments Clause claim.